UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ODEMARIS OCASIO,

                          Plaintiff,

v.                                                                          1:21-CV-0997
                                                                            (GTS/DJS)
SIX FLAGS GREAT ESCAPE, L.P.,
d/b/a SIX FLAGS GREAT ESCAPE LODGE &
INDOOR WATERPARK,

                          Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

TOPOROWSKI LAW, PLLC                           MATTHEW A. TOPOROWSKI, ESQ.
   Counsel for Plaintiff
P.O. Box 7271
Albany, NY 12224

SPECTOR GADON ROSEN VINCI P.C.          HEATHER EICHENBAUM, ESQ.
   Counsel for Defendant
1635 Market Street, 7th Fl.
Philadelphia, PA 19103

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently, before the Court in this personal injury action filed by Odemaris Ocasio

("Plaintiff") against Six Flags Great Escape, L.P., *d/b/a* Six Flags Great Escape Lodge & Indoor

Waterpark ("Defendant"), is Defendant's motion to enforce a settlement agreement. (Dkt. No.

27.) For the reasons set forth below, Defendant's motion is denied.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint and Relevant Procedural History

Generally, liberally construed, Plaintiff's Complaint filed on June 22, 2021, in the United

States District Court for the District of Massachusetts, asserts the following three claims based on a personal injury that Plaintiff allegedly sustained while on Defendant's premises: (1) negligence; (2) negligent hiring, retention, and supervision; and (3) negligent training. (Dkt. No. 1.)

On July 20, 2021, Defendant filed a motion to dismiss for lack of personal jurisdiction and improper venue in the United States District Court for the District of Massachusetts. (Dkt. Nos. 7-8.) On August 3, 2021, Plaintiff filed her opposition to Defendant's motion to dismiss, and, on August 9, 2021, Defendant filed its reply to Plaintiff's opposition. (Dkt. Nos. 11, 14.) On September 1, 2021, United States District Court Judge Mark G. Mastroianni issued a Text Order denying Defendant's motion to dismiss and transferring the action to this Court pursuant to 28 U.S.C. § 1631 based on lack of personal jurisdiction. (Dkt. No. 15.)

On October 4, 2021, Defendant filed its Answer to Plaintiff's Complaint. (Dkt. No. 23.) On November 19, 2021, Defendant filed its motion to enforce a settlement agreement. (Dkt. No. 27.) On April 28, 2022, after the Court granted Plaintiff multiple extensions of time so that she could retain new counsel, Plaintiff filed her opposition to Defendant's motion to enforce a settlement agreement. (Dkt. No. 38.) On May 2, 2022, Defendant filed its reply to Plaintiff's opposition. (Dkt. No. 40.)

B.  **Summary of the Parties' Briefing on Defendant's Motion to Enforce a Settlement Agreement**

1.  **Defendant's Memorandum of Law**

Generally, in support of its motion to enforce a settlement agreement, Defendant argues that there is no question that the parties reached an agreement on October 29, 2021, when Plaintiff's former counsel, Anthony Facchini, informed Defendant's counsel that Plaintiff had

accepted the terms of Defendant's settlement offer. (Dkt. No. 27-3, at 5.) More specifically, Defendant argues that at no point in time did Anthony Facchini express any disagreement with, or rejection of, the terms of the settlement reached by the parties. (*Id.* at 5-6.) Defendant argues that, even when Anthony Facchini told Defendant's counsel that he had been unable to reach Plaintiff to have the settlement documents executed, Anthony Facchini never indicated that there was a dispute about whether the parties had reached a settlement. (*Id.* at 6.) Defendant argues that the parties agreed to the essential terms of the settlement (i.e., that Defendant pay a set sum in exchange for a full and complete release of all claims and dismissal of this action as to Defendant and others), and that Plaintiff may not negate the settlement to which she previously agreed. (*Id.*)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in her opposition, Plaintiff sets forth three arguments. (Dkt. No. 38-5.)

First, Plaintiff argues that she never communicated to anyone her intent to accept Defendant's settlement offer. (*Id.* at 5.) More specifically, Plaintiff argues that she never accepted Defendant's offer to settle this action, and therefore Anthony Facchini and his brother, Richard Facchini ("Richard Facchini"), who is also an attorney, had no actual or apparent authority to settle on her behalf. (*Id.*) Plaintiff argues that Anthony Facchini did not have actual authority to settle this action for the following three reasons: (1) Plaintiff never signed any agreement to release her claims; (2) Richard Facchini has confirmed by sworn affidavit that he never received settlement authority from Plaintiff; and (3) Anthony Facchini has confirmed by sworn affidavit that he incorrectly communicated Plaintiff's acceptance of Defendant's settlement offer. (*Id.* at 6.) Plaintiff also argues that both Anthony Facchini and Richard Facchini

3

did not have apparent authority to settle her claims because Plaintiff, as the principal, never communicated with Defendant's counsel and, as a result, no apparent authority was created. (*Id.*)

Plaintiff further argues that, unlike the facts in the cases that Defendant cites in its motion, the facts in this case establish that Plaintiff never intended to settle this action; namely, Plaintiff argues that she did not learn that Anthony Facchini communicated to Defendant's counsel that Plaintiff had accepted the settlement offer until *after* Plaintiff requested her file from Anthony Facchini to review. (*Id.* at 7-8 [emphasis added].) Plaintiff argues that, upon learning this information, she promptly contacted the Court, sought new counsel, and opposed the motion. (*Id.*)

Second, Plaintiff argues that, to the extent the parties' unsigned settlement agreement is relevant here, it was created under an incorrect legal conclusion by Anthony Facchini, and therefore the Court should reject Defendant's attempt to force a settlement upon Plaintiff due to Anthony Facchini's errors. (*Id.* at 8.)

Third, Plaintiff argues that the application of state law would not change the outcome of this motion.  (*Id.*) More specifically, Plaintiff argues that Richard Facchini was not involved in her case and had no actual or apparent authority to settle her claims, and that it was unreasonable for Defendant's counsel to believe he had such authority. (*Id.* at 9-10.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in its reply, Defendant sets forth three arguments. (Dkt. No. 40.)

First, Defendant argues that it properly relied on Anthony Facchini's apparent authority in settling the action, not the apparent authority of Richard Facchini. (*Id.* at 3-7.) More specifically, Defendant argues that Plaintiff cannot meet her burden of proving that Anthony

4

Facchini did not have the authority to settle this case on her behalf. (*Id.* at 4.) Defendant argues that the affidavits submitted by Plaintiff, Anthony Facchini, and Richard Facchini, do not constitute affirmative or convincing evidence that they did not have the requisite authority to settle the lawsuit or that Defendant improperly relied on their representations because, when analyzing whether parties entered into a settlement agreement, the Court must look at "their objective intent as manifested by their expressed words and deeds at the time." (*Id.* at 4-5 [quoting *Stetson v. Duncan*, 707 F. Supp. 657, 666 (S.D.N.Y. 1998)].) Defendant argues that Anthony Facchini maintained apparent authority because he was Plaintiff's lone attorney of record at the time, actively participated in all court appearances, and was her representative in correspondence and verbal communications with defense counsel. (*Id.* at 5.) Defendant argues that Anthony Facchini also informed Defendant's counsel that he had communicated the settlement offer to Plaintiff and, on more than one occasion, represented (both verbally and in writing) that the case was settled. (*Id.*)

Second, Defendant argues that Plaintiff's contention that a settlement agreement is not enforceable unless signed or made in open court is incorrect. (*Id.* at 6.) Defendant further argues that Plaintiff's contention that the settlement agreement should not be upheld because it was based upon a flawed legal conclusion is not reason to invalidate the agreement, because "risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected that agent" and because Plaintiff has other recourse if her prior counsel acted beyond her authority (i.e., a claim against her prior counsel). (*Id.* at 7 [quoting *In re Dreir, LLP*, 450 B.R. 452, 457-58 (S.D.N.Y. Bankr. 2011)].)

Third, Defendant argues that New York State law does not change the outcome of this

5

motion. (*Id.* at 7-9.) More specifically, Defendant argues that Anthony Facchini was clearly involved in Plaintiff's case, actively participated in settlement discussions, and relayed to Defendant's counsel that Plaintiff had agreed to settle—facts that each provided Defendant (and its counsel) with reason to rely on those representations. (*Id.* at 8.) Defendant argues that, even if Plaintiff's prior counsel exceeded his authority, Plaintiff's remedy is against her prior counsel, not Defendant. (*Id.*) Defendant further argues that, contrary to Plaintiff's contentions, Defendant did not rely on the authority of Richard Facchini in settling this action, but instead relied on Anthony Facchini's explicit statements that the case was settled, when preparing the settlement documents. (*Id.* at 8-9.)

## II.      RELEVANT LEGAL STANDARD

"A district court has the authority to enforce a settlement agreement reached in a case pending before it." *Sorensen v. Consol. Rail Corp.*, 992 F. Supp. 146, 149 (N.D.N.Y. 1998) (Homer, M.J.) (citing *Cruz v. Korean Air Lines, Co., Ltd.,* 838 F. Supp. 843, 845-46 (S.D.N.Y. 1993)). "Stipulations of settlement are favored by the courts and not lightly cast aside[.]" *Hallock v. State of N.Y.*, 64 N.Y.2d 224, 230 (N.Y. 1984); *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc.*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). The question of whether state or federal law controls the enforceability of oral settlement agreements in this context is "an open one." *Figueroa v. N.Y.C. Dep't of Sanitation*, 475 F. App'x 365, 366 (2d Cir. 2012) (summary order) (citing *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322, n. 1 (2d Cir. 1997)).[1] "'Nonetheless, federal courts in the Second Circuit regularly apply New York law,

---

[1]      *See also Massie v. Metro. Museum of Art*, 651 F. Supp. 2d 88, 92 (S.D.N.Y. 2009) (report and recommendation) ("The Second Circuit has left open the question of whether state or federal law controls the enforceability of oral settlement agreements, whether in federal-question or

observing that there is no meaningful substantive difference between federal and New York law with regard to enforceability.'" *Vacco v. Harrah's Operating Co., Inc.*, 661 F. Supp. 2d 186, 198, n. 14 (N.D.N.Y. 2009) (McAvoy, J.) (quoting *Massie v. Metro. Museum of Art*, 651 F. Supp. 2d 88, 92-93 (S.D.N.Y. 2009)).

## III.   ANALYSIS

After carefully considering the matter, the Court denies Defendant's motion for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 38-5.) To those reasons, the Court adds the following analysis, which is intended to supplement, and not to supplant, Plaintiff's reasoning.

Before providing its legal analysis of the issues involved in Defendant's motion, a brief review of the exchanges between Defendant's counsel and Anthony Facchini will be beneficial. On the afternoon of October 26, 2021, Defendant's counsel sent Anthony Facchini an email containing a subject line that read, "Ocasio – any luck getting a demand?" (Dkt. No. 27-4, at 3.) Within thirty minutes, Anthony Facchini responded and asked if Defendant's counsel had time for a phone call the following morning, to which Defendant's counsel responded and a time was confirmed. (*Id.* at 1-3.) According to Defendant's motion, during that subsequent phone call between counsel, "[Defendant] offered [Plaintiff] [an undisclosed sum] to settle their dispute, and [Anthony Facchini] stated that he would bring the offer to her." (Dkt. No. 27-3, at 2.)

Three days later, on October 29, 2021, Anthony Facchini sent the following text message

---

diversity cases."); *Pullman v. Alpha Media Pub., Inc.*, 12-CV-1924, 2014 WL 5043319, at *6 (S.D.N.Y. Mar. 14, 2014) (finding New York law applied due in part to the fact that "the parties' briefs rely on New York statutes, New York state cases, and federal cases from courts in the Second Circuit").

to Defendant's counsel: "Good evening, Heather. It's Anthony Facchini. My brother, Richard, got Ms. Ocasio to accept the offer. I know you are slammed with work, but when you have a chance[,] please email me the release so Richard can have her sign. Thank you." (Dkt. No. 27-5, at 2.) Defendant's counsel responded, as follows: "Excellent! You owe your brother a beer! Lol! I'll have it to you tonight[.]" (*Id.*) A few hours later, Defendant's counsel emailed Anthony Facchini with the written release, asking him to provide Plaintiff's W-9 and "confirm how the check should be made payable so [Defendant's counsel could] request the check while [Anthony Facchini was] getting [the release] executed." (Dkt. No. 27-6, at 2.) Again, three days later, on November 1, 2021, Anthony Facchini responded regarding who would sign the stipulation of dismissal. (Dkt. No. 27-7, at 2.)

One week later, on November 8, 2021, Anthony Facchini emailed Defendant's counsel and stated the following about Plaintiff:

> I hope all is well with you. After advising my brother, Richard, she would settle the case[,] she has avoided all communications from our office. This morning, she spoke with my legal assistant seeking the case number as she may have a New York licensed attorney to take over her representation. In the meantime, as we are quickly approaching court deadline and I hope to be out of the office next week[,] a Motion to Admit myself Pro Hac Vice will be filed on my behalf. Would you please assent to it? In addition, the Rule 16 Initial Conference memorandum is coming due, I will get you an initial draft of it.

(Dkt. No. 27-8, at 2.) Approximately three weeks later, on November 27, 2021, Defendant filed the current motion to enforce a settlement agreement. (Dkt. No. 27.) In support of her opposition, Plaintiff (who is now represented by new counsel) has submitted three affidavits, including one from herself, one from Anthony Facchini, and one from Richard Facchini.

These affidavits provide the following six key facts: (1) upon hearing of the settlement

offer, Plaintiff never told either Anthony Facchini or Richard Facchini that she accepted the offer (despite receiving pressure to accept it) but stated that she "needed time to process . . . and . . . needed a second opinion" (Dkt. No. 38-2, at ¶¶ 4-7); (2) Plaintiff did not know Anthony Facchini "had told the other lawyer that [she] had accepted their offer to settle" until after she requested her file from his office to review (*id.* at ¶¶ 9-14); (3) upon learning this information (along with the fact that Anthony Facchini was not licensed to practice in New York), Plaintiff "called the federal court clerk . . . because [she] needed time to find a new lawyer," and thereafter requested an extension of time in order to do so (*id.* at ¶¶ 15-16); (4) Richard Facchini, who spoke to Plaintiff, admitted that, although "it was [his] impression that [Plaintiff] was going to agree to settle her case" after their telephone call on October 29, 2021, which is why he texted Anthony Facchini "ALL SET" after speaking with her, "[Plaintiff] did not explicitly say so" or "expressly agree to settle the matter" (Dkt. No. 38-4, at ¶¶ 6-8); (5) Anthony Facchini confirmed that he spoke to Defendant's counsel on October 29, 2021, and accepted the offer "without verifying what [Richard Facchini] meant by stating it was 'ALL SET'" and without "verifying it with [Plaintiff]" (Dkt. No. 38-3, at ¶ 5); and (6) when Anthony Facchini did speak to Plaintiff on November 8, 2021, "she was very clear that she never accepted the settlement offer[,] . . . but only agreed to consider it" (*id.* at ¶ 10).

At its core, the dispute between the parties is whether Anthony Facchini (and, potentially, Richard Facchini) had the requisite authority to settle Plaintiff's lawsuit when Anthony Facchini told Defendant's counsel that Plaintiff accepted Defendant's settlement offer. (Dkt. Nos. 27-3, 38-5, 40.) "[W]ithout a grant of authority from the client, an attorney cannot compromise or settle a claim[,] and settlements negotiated by attorneys without authority from their clients have

not been binding[.]" *Hallock*, 64 N.Y.2d at 230; *Alvarez v. City of N.Y.*, 146 F. Supp. 2d 327, 334 (S.D.N.Y. 2001) ("[T]he decision to settle a case rests with the client . . . ."). "Under New York law, a settlement agreement entered into by a client's attorney is binding upon that client if the attorney had actual or apparent authority at the time the agreement was executed." *Nat'l Union Fire Ins. Co. of Louisiana v. Univ. Fabricators, Inc.*, 713 F. Supp. 2d 206 (S.D.N.Y. 2010); *Watson v. City of N.Y.*, 11-CV-0335, 2012 WL 6006066, at *3 (E.D.N.Y. Oct. 24, 2012) (stating that an "attorney must have at least apparent authority to enter into a settlement on behalf of his client"). Here, the parties have focused on whether apparent authority existed at the time of the agreement. (Dkt. Nos. 27-3, 38-5, and 40.)

"Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses the authority to enter into a transaction." *Melstein v. Schmid Labs*, 116 A.D.2d 632, 634 (N.Y. App. Div. 2d Dep't 1986); *Watson*, 2012 WL 6006066, at *3 ("Apparent authority has been defined as the 'power held by an agent . . . to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."). "The attorney may not create apparent authority through his own actions; rather, *the actions of the client towards the third party creates apparent authority*." *Bravo v. Grand Review*, 15-CV-0030, 2016 WL 11671529, at *3 (E.D.N.Y. Mar. 18, 2016) (emphasis added); *Melstein*, 116 A.D.2d at 634. In other words, "[a] principal may be bound by the actions of an agent on the basis of apparent authority only where it is shown that a third party . . . reasonably relied upon the misrepresentation of the agent *because of some misleading conduct on the part of the principal*." *Stichting Ter Behartiging Van*

10

*de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407

F.3d 34, 56 (2d Cir. 2005) (addressing New York State law on apparent authority) (internal

quotation marks omitted and emphasis added). Although the parties arguments regarding

apparent authority include references to both state and federal law interpreting this issue,[2] the

Court need not address which law applies because, for the reasons set forth below, the result

would be the same.

Despite Defendant's efforts to distinguish the Second Circuit's decision in *Fennell v. TLB*

*Kent Co.*, 865 F.2d 498 (2d Cir. 1989), from the facts at issue in this case, the Court finds that the

facts in *Fennell* are sufficiently similar to the facts in this case for *Fennell* to guide. In *Fennell*,

the Second Circuit found that the plaintiff's counsel did not have apparent authority to settle the

lawsuit, and therefore reversed and remanded the case to the district court. 865 F.2d at 503. In

doing so, the Second Circuit provided the following analysis:

> In this case, taking the facts as the district court found them, Fennell
> made no manifestations to defendants' counsel that Mason and his
> associates were authorized to settle the case. Fennell's attorneys
> accordingly had no apparent authority to settle the case for $10,000
> without Fennell's consent. *The district court's findings that Mason*
> *and his associates represented Fennell, and that they were*
> *authorized to appear at conferences for him, do not prove otherwise.*
> A client does not create apparent authority for his attorney to settle
> a case merely by retaining the attorney.
>
> Further, *the court's findings that Fennell knew settlement was being*
> *discussed, did not ask his attorneys not to discuss settlement, would*

---

[2]      *Compare Sorenson*, 992 F. Supp. at 149 ("[A]n attorney may have actual or implied
authority to enter a binding settlement and in a *federal question* case, the scope of an agent's
authority is a question of federal law.") (emphasis added) *with Consumers Subscription Ctr., Inc.*
*v. Web Letter Co.*, 609 F. Supp. 1134, 1138-40 (E.D.N.Y. May 22, 1985) (addressing whether
actual or apparent authority existed by citing New York State law in a *diversity* jurisdiction
case).

> *have accepted a higher settlement figure, and did not tell*
> *defendant's counsel that the authority of plaintiff's counsel was*
> *limited in any way, do not lead to a different outcome.* These
> findings involve only discussions between Fennell and his attorney
> or things that Fennell did *not* say to opposing counsel. None of these
> findings relates to positive actions or manifestations by Fennell to
> defendants' counsel that would reasonably lead that counsel to
> believe that Fennell's attorneys were clothed with apparent authority
> to agree to a definitive settlement of the litigation.

*Id.* at 502 (emphasis added).

The Second Circuit in *Fennell* likewise noted that the "application of state law would not

yield a contrary result," taking the stance that *Hallock v. State*, 64 474 N.E.2d 1178 (N.Y.

1984)—a New York Court of Appeals case upon which Defendant relies—would not "call for a

decision" in favor of the defendants. *Id.* at 502-03; (Dkt. No. 40, at 7.) In *Hallock*, the New York

Court of Appeals found that apparent authority existed where an attorney had "represented

plaintiffs throughout the litigation, engaged in prior settlement negotiations for them and, in

furtherance of the authority which had been vested in him, appeared at the final pretrial

conference, his presence there constituting an implied representation by Hallock to defendants

that [the attorney] had authority to bind him to the settlement." 474 N.E.2d at 1182.

The Second Circuit in *Fennell* found that the circumstances in *Hallock* were

distinguishable from the facts before it; more specifically, the Second Circuit noted that, in

*Hallock*, "an applicable court rule required that attorneys attending pretrial conferences have

authority to enter into binding court settlements on behalf of their clients, a co-plaintiff attended

the conference from which Hallock was absent because of illness, and more than two months

passed before plaintiffs made any objection to the settlement." *Id.* at 503 (citing *Hallock*, 474

N.E.2d at 1179-80). In contrast, *Fennell* addressed a situation "where a purported settlement

agreement was reached in a telephone conference by counsel in which no party participated, and Fennell made prompt objection to that agreement upon being advised as to its terms." *Id.* The Second Circuit further restated the "generally applicable New York rule" that "'a party who relies on the authority of an attorney to compromise an action in his client's absence deals with such attorney at his own peril.'" *Id.* (quoting *Melstein v. Schmid Labs., Inc.*, 116 A.D.2d 632, 634 (2d Dep't 1986)).

Following the guidance in *Fennell*, the Court cannot enforce the purported settlement agreement in this action. Here, as Defendant itself acknowledges, "the undersigned defense counsel sent email correspondence to plaintiff's counsel inquiring as to whether Ocasio had a settlement demand, and a call to negotiate was scheduled for the following morning." (Dkt. No. 27-3, at 2.) During that phone call, "a settlement agreement was reached . . . by counsel in which no party participated . . . ." *Fennell*, 865 F.2d at 502.[3] The affidavits submitted by Plaintiff, Anthony Facchini, and Richard Facchini all state that Plaintiff never agreed to the terms set forth by counsel in their phone call, and, upon learning of her counsel's representations to Defendant's counsel that she had accepted the settlement offer, Plaintiff "made prompt objections" by seeking new counsel and challenging the agreement. *Id.* at 503; *Int'l Broth. of Teamsters*, 986 F.2d at 20. (Dkt. No. 82-2, at ¶¶ 7, 10-16; Dkt. Nos. 29, 32, 37.)

This is not a situation in which Plaintiff (or her attorneys, with her requisite authority)

---

[3]      *See also U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 986 F.2d 15, 20 (2d Cir. 1993) (finding apparent authority existed by contrasting the facts of that case with those in *Fennell*, and specifically, the fact that the "settlement agreement was reached in a telephone conference by counsel in which no party participated and Fennell made prompt objections to that agreement upon being advised as to its terms").

agreed to a settlement offer and its relevant terms, but now refuse to take the final step of signing the written agreement. *See Willgerodt*, 953 F. Supp. at 560 ("Afterthought or change of mind are not sufficient to justify rejecting a settlement."); *U.S. Fire Ins. Co. v. Pierson & Smith, Inc.*, 06-CV-0382, 2007 WL 4403545, at *3 (S.D.N.Y. Dec. 17, 2007) ("Where a party has entered into an oral agreement to settle, the party cannot avoid the settlement by refusing to sign the papers that would memorialize the terms of the agreement . . . ."). Rather, Plaintiff's former counsel did not have either actual or apparent authority to settle the lawsuit from the outset—a fact negating Defendant's reliance on case law stating that, "*if an attorney has apparent authority* to settle a case, *and* the opposing counsel has no reason to doubt that authority, the settlement will be upheld." (Dkt. No. 40, at 3 [emphasis added].)

The Court recognizes that some New York State courts have found that, where an attorney "had a lengthy involvement in [the] case, engaging in settlement negotiations and appearing at pretrial conferences," such actions "constitute 'an implied representation by [the client] to defendants that [the attorney] had authority' to bind the client to the settlement[.]" *Davidson v. Metro. Transit Auth.*, 44 A.D.3d 819, 819 (N.Y. App. Div. 2d Dep't 2007) (quoting *Hallock*, 64 N.Y.2d at 231-32). In this specific case, however, the proceedings had just recently begun when settlement negotiations started, with only four months passing between the filing of the Complaint and Defendant's motion to enforce settlement. (Dkt. Nos. 1, 27.)

More importantly, however, the Court cannot see how it may overlook the three sworn statements from Plaintiff, Anthony Facchini, and Richard Facchini, explicitly stating that Plaintiff did not authorize them to accept Defendant's settlement offer, to instead find that Anthony Facchini's brief representation of Plaintiff established the requisite authority to bind her

14

to this agreement.[4] Although Defendant contends that the affidavits "attempt to explain [Plaintiff's, Anthony Facchini's, and Richard Facchini's] subjective thoughts, beliefs and intentions," the Court finds that they are the only evidence in this case regarding Plaintiff's actions with respect to her attorneys, Defendant (and its counsel), and the settlement offer—facts that conclusively show that Plaintiff's words and conduct did not establish either actual or apparent authority. *See Stichting*, 407 F.3d at 56 ("[I]rrespective of the representations made by the agent—here, [Anthony Facchini]—and relied upon by the third party—here, [Defendant's counsel]—there must also be demonstrated some reliance nexus between the principal— [Plaintiff]—and that third party.") (applying New York State law). This is not a situation where, for example, Plaintiff was present during settlement discussions (such as in a mediation or judicial settlement conference) or was included in communications regarding settlement with Defendant's counsel, and therefore Defendant's counsel could reasonably rely on Plaintiff's conduct or words in these interactions to believe that Anthony Facchini had actual or apparent authority to settle her case. Under these circumstances, defense counsel's reliance on the apparent authority of then-Plaintiff's counsel was truly at her own peril.

The Court does not come to this conclusion lightly, because it maintains grave concerns regarding Anthony Facchini's and Richard Facchini's careless misrepresentations to Defendant's counsel regarding Plaintiff's acceptance of their offer—facts they both admit in their affidavits submitted in support of Plaintiff's opposition. (Dkt. Nos. 38-2, 38-3, 38-4.) And, although the

---

[4]      *Cf. Watson,* 2012 WL 6006066, at *4 (finding apparent authority existed where the attorney testified that he had "full authority to act on [the plaintiff's] behalf until he was relieved as counsel" and where the plaintiff had "not offered any contrary evidence").

15

Court understands Defendant's position that these affidavits are "self-serving" and a means to reduce the chance of a malpractice lawsuit against the affiants, the sworn statements from both Anthony Facchini and Richard Facchini, as well as Plaintiff, include key factual assertions that Defendant cannot contest and that the Court accepts.[5]

Ultimately, the facts remain that Plaintiff did not, through her words or her conduct, imbue her attorneys with the requisite authority to settle her case, and Defendant did not (nor can it) "demonstrate some reliance nexus between" Plaintiff and itself. *Stichting*, 407 F.3d at 56. Without such authority, an agreement was not established. Again, although the Court recognizes this is a frustrating outcome for Defendant, the Court is persuaded by the Second Circuit's rationale in *Fennell* that "[c]lients should not be faced with a Hobson's choice of denying their counsel all authority to explore settlement or being bound by *any* settlement to which their counsel might agree, having resort only to an action against their counsel for malpractice." *Fennell*, 865 F.2d at 503. Therefore, based on the facts at issue in this case, the Court must deny Defendant's motion.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to enforce a settlement agreement (Dkt. No. 27) is **DENIED**.

Date:   September 13, 2022
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[5]     *See, e.g., Jonassen v. U.S.*, 103 F. Supp. 862, 863 (E.D.N.Y. 1952) ("The facts upon which the motion is based are set forth in affidavits . . . ; there is no opposing affidavit, which means that the recitals are accepted as true for the purposes of this motion.").

16